**SO ORDERED.**

**SIGNED this 24th day of September, 2012.**



Dale L. Somers
United States Bankruptcy Judge

_____

**Opinion Designated for Electronic Use, But Not for Print Publication**
**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF KANSAS**

In re:

**JEANA L. TIMMONS,**

               **DEBTOR.**

**CASE NO. 11-20513-7**
**CHAPTER 7**

**OPINION GRANTING REQUEST OF SALLIE MAE, INC., TO DISMISS**
**THE DEBTOR'S MOTION FOR CONTEMPT, AND DENYING AS MOOT**
**THE DEBTOR'S MOTION FOR ENFORCEMENT OF DISCOVERY**

The matters before the Court for decision arise from the Debtor's motion asking

the Court to hold creditor Sallie Mae, Inc., in contempt for violating either the automatic

stay or the discharge injunction. The Debtor appears by counsel Neil S. Sader of the

Sader Law Firm. Sallie Mae appears by counsel Matthew F. Mulhern of Manz, Swanson

& Mulhern. The Court has reviewed the relevant materials and is now ready to rule.

When the Debtor filed her Chapter 7 bankruptcy, she owed a debt to Sallie Mae

that she concedes is a nondischargeable student loan. She claims she had always been

current on her monthly payment obligation on the debt before she filed bankruptcy and continued to make the payments after she filed. Nevertheless, shortly after she received a discharge, Sallie Mae notified her that it had declared her debt to be in default and accelerated it, making the full amount due. Sallie Mae later sent her a letter offering to settle the debt at a discount. The Debtor soon filed a motion asking the Court to hold Sallie Mae in contempt for accelerating the debt and pressuring her to settle the debt immediately, contending Sallie Mae had accelerated the debt based solely on her bankruptcy filing, and its actions violated either the automatic stay or the discharge injunction, and also violated a Kansas consumer protection statute. As explained below, the Court concludes (1) nothing in the Bankruptcy Code restricted Sallie Mae's post-discharge efforts to collect its nondischarged debt, and (2) the Court has no subject matter jurisdiction to decide the Debtor's claim that Sallie Mae violated Kansas law by declaring her to be in default even though she never defaulted on her payments. These rulings mean the Debtor is not entitled to obtain further discovery from Sallie Mae under this Court's authority, so her motion for enforcement of discovery and for discovery sanctions is now moot and will be denied.

**FACTS**

In deciding a request to dismiss a claim under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on which relief may be granted, the Court must

2

assume the factual allegations supporting the claim are true.[1]  Consequently, the Court

will describe the relevant allegations here as if they were true, but is not deciding whether

they are in fact true.

When the Debtor filed her Chapter 7 petition on March 3, 2011, she owed Sallie

Mae almost $5,000 on a nondischargeable student loan promissory note.  She was then

current on her monthly payment obligation on the debt, and she continued to make the

monthly payments of $50.82 called for by the note.  She received a discharge on June 8,

2011, and her case was closed the same day.

A month and a half later, Sallie Mae sent the Debtor a letter dated July 20, 2011,

which notified her that her loan was in default and she should contact Sallie Mae

immediately to resolve the loan; the current balance was stated to be $4,980.27.  A short

time later, Sallie Mae sent her a letter dated August 4, 2011, offering to accept $3,378.05,

70% of the then-current balance of $4,825.79, in settlement of the debt.  The Debtor and

her attorney contacted Sallie Mae representatives and were told the default had been

declared and the loan accelerated because she had filed bankruptcy.

On November 1, 2011, the Debtor filed a motion to reopen her case so she could

seek relief against a creditor she believed had violated either the automatic stay or the

discharge injunction; no objections were filed and the case was reopened on November

29.  On December 1, 2011, the Debtor filed her motion asking the Court to hold Sallie

---

[1]*Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555-56 (2007).

Mae in contempt, claiming its act of accelerating the loan violated either the automatic stay imposed by § 362(a) or the discharge injunction imposed by § 524(a)(2), depending on when the acceleration was done. The Debtor also claimed the acceleration constituted consumer abuse under K.S.A. 16a-5-109, a provision of the Kansas Uniform Consumer Credit Code. The Debtor asked the Court to order Sallie Mae to honor the original payment requirements of her promissory note, to pay her attorney fees, and, if the Court should find them to be appropriate, to pay punitive damages. Sallie Mae responded on December 20, contending (1) the Debtor had not identified any act that Sallie Mae committed between the petition date and the discharge date that violated § 362(a), so there was no stay violation; (2) although Sallie Mae accelerated the Debtor's student loan and tried to collect it after the discharge order was entered, the debt was nondischargeable and the Bankruptcy Code provided no remedy for her allegations; (3) the Court had no subject matter jurisdiction or constitutional authority to adjudicate the Debtor's claim under K.S.A. 16a-5-109; and (4) through counsel, Sallie Mae had offered to reinstate the Debtor's loan so she could make monthly payments with no demand for an accelerated payoff.

On March 13, 2012, the Debtor filed a motion for enforcement of discovery, claiming she had served requests for production of documents, but Sallie Mae had failed to provide timely responses or to properly object to four of the nineteen requests she had made. Sallie Mae had objected that, among other things, the information the four requests sought was irrelevant. The Debtor asked the Court to order Sallie Mae to pay attorney

4

fees she had incurred in this discovery dispute. Sallie Mae responded to the Debtor's motion, arguing that the Debtor had not asserted a valid claim for relief against it, and asking the Court to determine under Federal Rule of Civil Procedure 12(b)(6) whether the Debtor's motion for contempt failed to state a claim on which relief could be granted.

The Debtor filed a response to Sallie Mae's request for a ruling on the Rule 12(b)(6) question. She contended Sallie Mae's "Notice of Default and loan acceleration interferes with the settled bankruptcy principles of the fresh start and equity, and violates § 524 of the [Bankruptcy] Code and relevant case law." She argued: (1) although her debt to Sallie Mae is nondischargeable, the Bankruptcy Code's fresh start principle should nevertheless bar Sallie Mae's post-discharge declaration of default and acceleration of her promissory note because she has always remained current on her monthly payment obligation; (2) in Chapter 13 cases, bankruptcy courts have held that student loan creditors cannot accelerate their loans during a Chapter 13 plan and that debtors should not be required to pay more on such debts than is necessary to remain current on them, and (3) the Court's broad equitable powers authorize it to prevent Sallie Mae from enforcing its decision to accelerate her loan because she has always been current on the loan, and she is a single mother raising two daughters.

**DISCUSSION**

**1. The Court concludes it can address Sallie Mae's request for dismissal, despite some procedural irregularities.**

This is a contested matter governed by Federal Rule of Bankruptcy Procedure

5

9014.  Rule 9014(c) makes various rules governing adversary proceedings apply to contested matters but, oddly enough, does not make Rule 7012, subsection (b) of which makes Civil Rule 12(b) apply to adversary proceedings, apply.  Rule 9014(c) provides that the Court can make other adversary rules apply to a contested matter, but is to give the parties notice and a reasonable opportunity to comply with any order doing so.  However, in opposing Sallie Mae's assertion that the Court should determine under Rule 12(b)(6) whether the Debtor has stated a colorable claim for relief against it, the Debtor has not complained about any lack of notice of the application of Rule 12, arguing only that she has stated a valid claim for relief.  Furthermore, the Tenth Circuit has ruled a court can, even without notice and an opportunity to amend when it is apparent any amendment would be futile, dismiss a complaint *sua sponte* for failure to state a claim.[2] Sallie Mae raised the question of the sufficiency of the Debtor's assertion of a claim for relief and the Debtor has addressed that question on the merits.  Under these circumstances, the Court finds it appropriate to decide the Rule 12(b)(6) question at this time.

**2.  The Debtor has failed to identify anything in the Bankruptcy Code that barred Sallie Mae's declaration of default and acceleration of her student loan debt.**

The Debtor contends that several facets of federal law under the Bankruptcy Code

---

[2]*Smith v. Colorado Dept. of Corrections*, 23 F.3d 339, 340 (10th Cir. 1994).

support her claim asking the Court to find Sallie Mae in contempt.[3]  First, she argues

Sallie Mae violated § 524(a)(2) of the Bankruptcy Code when it declared her to be in

default and accelerated her student loan.  That provision reads:

> (a) A discharge in a case under this title —
>     . . .
>         (2) operates as an injunction against the commencement or
> continuation of an action, the employment of process, or an act, to collect,
> recover or offset any such debt as a personal liability of the debtor.

But, as the Debtor concedes, § 523(a)(8) applies to her debt to Sallie Mae.  It provides:

> (a) A discharge under section 727 . . . of this title does not discharge an
> individual debtor from any debt —
>     . . .
>     . . .
>         (8) . . . for —
>             (A)(i) an educational . . . loan made, insured, or guaranteed by
>     a governmental unit, or made under any program funded in whole or
>     in part by a governmental unit.

While § 524(a)(2) specifies some effects of the discharge of a debt, § 523(a)(8)(A)(i) says

the Debtor's discharge did not discharge her debt to Sallie Mae.  The Debtor is asking the

Court to apply at least part of the discharge injunction imposed by § 524 to Sallie Mae

even though Sallie Mae's claim against her was not discharged.  The Court cannot accept

such a construction of these provisions.  Instead, the only reasonable interpretation is that

§ 524(a) simply does not apply to any debt that falls within § 523(a)(8).  Since Sallie

Mae's loan was covered by § 523(a)(8)(A)(i), nothing Sallie Mae did with respect to that

debt could possibly have violated § 524(a)(2).

_____

[3]In her response to Sallie Mae's request for dismissal, the Debtor did not mention her earlier
assertion that Sallie Mae's acceleration of her debt may have violated the automatic stay imposed by
§ 362(a).  The Court concludes she has abandoned that assertion, and will not address it in this opinion.

7

Second, the Debtor argues Sallie Mae's declaration of default and acceleration of her debt violated the general fresh start principle of the Bankruptcy Code. But as the Eleventh Circuit said in a Chapter 11 case, "Nondischargeable debts are those types of debts, such as taxes or child support payments, that Congress thought important enough to be paid in full, even if doing so impeded the debtor's ability to make a fresh start."[4] In *In re DePaolo*,[5] another Chapter 11 case involving individual debtors, the Tenth Circuit similarly indicated that the nondischargeability of a debt overrides the debtor's interest in obtaining a fresh start. In *DePaolo*, the IRS had filed proofs of claim for certain tax years and stipulated with the debtors to the amount they would pay on those taxes under their Chapter 11 plan.[6] The debtors' plan was then confirmed and the confirmation order granted the debtors a discharge.[7] Later, the IRS audited the debtors' tax return for one of the years covered by the stipulation, and determined they owed additional taxes for that year.[8] Because § 1141(d)(2) provided that plan confirmation did not discharge individual debtors from debts covered by § 523 and the additional taxes were covered by § 523, the Tenth Circuit ruled the IRS was entitled to collect the additional taxes. The Circuit said, "By expressly providing that the described taxes are not discharged . . . , Congress has

---

[4]*United States v. White*, 466 F.3d 1241, 1247 (11th Cir. 2006).

[5]45 F.3d 373 (10th Cir. 1995).

[6]*Id*. at 374-75.

[7]*Id*. at 375.

[8]*Id*.

8

determined that the IRS may make a claim for taxes for a particular year in a bankruptcy proceeding, accept the judgment of the bankruptcy court, then audit and make additional claims for that same year, even though such conduct may seem inequitable or may impair the debtor's fresh start."[9]  Similarly, although Sallie Mae's declaration of default and acceleration of the Debtor's student loan may impair her fresh start, the fact Congress made its debt nondischargeable means that Congress has determined that Sallie Mae's interest in collecting the debt should override the Debtor's interest in obtaining a fresh start.

Third, the Debtor cites two Chapter 13 cases to support the assertion "that if the [Bankruptcy] Code prohibits student loan acceleration during a bankruptcy, the Code certainly prohibits this type of acceleration immediately after the Discharge Order."[10]  But the two cases the Debtor cites both say only that Chapter 13 *debtors* cannot propose plans that accelerate their student loans, not that the *creditors* to whom such debts are owed cannot accelerate them.[11]  The cases involved Chapter 13 debtors who filed plans proposing to pay more on their unsecured but nondischargeable student loan debts than on their other unsecured debts.[12]  Both courts considered whether this proposed

---

[9]*Id*. at 376.

[10]Dkt. no. 32 at 6.

[11]*In re Kalfayan*, 415 B.R. 907 (Bankr. S.D. Fla. 2009); *In re Keel*, 143 B.R. 915 (Bankr. D. Neb. 1992).

[12]*See* 415 B.R. at ; 143 B.R. at 916-17.

discrimination was unfair and therefore violated § 1322(b)(1).[13]  It was in the course of

deciding that question that both courts said the debtors could not accelerate their student

loans.[14]  Clearly, neither case has anything to say about whether a *creditor* can accelerate

a nondischargeable student loan during a Chapter 13 case.  Even more clearly, then, they

say nothing about whether such a creditor can accelerate its loan after a Chapter 7 debtor

receives a discharge and his or her case is closed.

 Fourth, the Debtor argues the Court has broad equitable powers to bar Sallie Mae's

acceleration of her debt because she is a single mother raising two daughters and is

unable to pay the accelerated balance of the debt.  The only authority she cites for this

argument is *In re Prime Motor Inns, Inc.*[15]  In that case, the court decided to enjoin one or

more Chapter 11 debtors (and perhaps other defendants) from accelerating debts of over

$200,000,000 because the borrowers had not timely produced audited financial

statements, at least in part because the accounting firm that was supposed to create the

statements had filed bankruptcy and ceased operating.[16]  The court said it had "broad

equitable powers to prevent the drastic consequences that would result upon an

acceleration."[17]  The first authority the court cited for this statement was § 105(a) of the

---

[13]415 B.R. at 909-11; 143 B.R. at 916-17.

[14]415 B.R. at 911; 143 B.R. at 917.

[15]131 B.R. 233 (Bankr. S.D, Fla. 1991).

[16]*Id*. at 235-37.

[17]*Id*. at 236.

Bankruptcy Code. As relevant here, that provision says, "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."[18] But the injunction the court granted in that case was against the debtors in ongoing Chapter 11 cases, parties who were undoubtedly subject to the court's continuing jurisdiction. Here, by contrast, the Debtor had received her discharge, her bankruptcy case had been closed, and her nondischargeable debt to Sallie Mae was no longer expressly subject to anything in the Bankruptcy Code.

Furthermore, the Court's powers under § 105(a) are not broad enough to authorize the Court to protect the Debtor from Sallie Mae's post-discharge, post-case-closure actions. For example, the First Circuit has declared, "[S]ection 105(a) does not provide bankruptcy courts with a roving writ, much less a free hand. The authority bestowed thereunder may be invoked only if, and to the extent that, the equitable remedy dispensed by the court is necessary to preserve an identifiable right conferred elsewhere in the Bankruptcy Code."[19] Similarly, in *Scrivner*, the Tenth Circuit ruled that even strong equitable concerns do not authorize bankruptcy courts to use their § 105(a) powers to create new remedies different from those contained in the Bankruptcy Code.[20] In that case, the bankruptcy court had ordered a surcharge against the debtors' exempt property because they had failed to turn over to the Chapter 7 trustee postpetition income produced

---

[18]11 U.S.C. § 105(a).

[19]*Jamo v. Katahdin Fed. Credit Union (In re Jamo)*, 283 F.3d 392, 403 (1st Cir. 2002).

[20]535 F.3d 1258, 1263-65 (2008).

11

by an estate asset that they had not claimed as exempt.[21]  Despite the strong equities

supporting the surcharge, the Circuit said, "[B]ecause the surcharge of exempt property is

inconsistent with the Code's provisions governing exemptions and debtor misconduct, it

is beyond the scope of a bankruptcy court's equitable authority under § 105(a).  Section

105(a) does not empower courts to create remedies and rights in derogation of the

Bankruptcy Code and Rules."[22]  The Debtor's proposed injunction against Sallie Mae's

acceleration of her debt would be inconsistent with § 523(a)(8)'s declaration that the debt

has not been discharged, so it cannot be authorized by § 105(a).

The Court concludes the Debtor has not identified anything in the Bankruptcy

Code that barred Sallie Mae from declaring a default because of her bankruptcy case and

accelerating the student loan debt she owes it.

### 3.  The Court does not have subject matter jurisdiction over the Debtor's claim that Sallie Mae's actions violated K.S.A. 16a-5-109.

Since the Debtor's efforts to base her claim on the Bankruptcy Code fail, she is left

with her assertion that Sallie Mae violated K.S.A. 16a-5-109 by declaring her to be in

default and accelerating her debt despite her allegedly perfect record of timely monthly

payments.  That Kansas statute provides:

> An agreement of the parties to a consumer credit transaction with respect to default on the part of the consumer is enforceable only to the extent that

---

[21]*Id*. at 1261-62.

[22]*Id*. at 1265.

12

(1) the consumer fails to make a payment as required by agreement; or
(2) the prospect of payment, performance, or realization of collateral is significantly impaired; the burden of establishing the prospect of significant impairment is on the creditor.

The Court agrees with the Debtor that this statute might prevent Sallie Mae from enforcing its declaration of default against her, since she was making her required payments and the mere fact she filed bankruptcy would not appear to significantly impair her continued payments on the student loan. But Sallie Mae is right to dispute the Court's subject matter jurisdiction to decide that state-law claim. For the following reasons, the Court concludes it does not have jurisdiction to determine the claim.

In 1984, acting under authority conferred by 28 U.S.C. § 157(a), the U.S. District Court for the District of Kansas issued a standing order that referred to the District's bankruptcy judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code.[23] As relevant here, the standing order concerned the District Court's jurisdiction under 28 U.S.C. § 1334(b), which gives it "original but not exclusive jurisdiction of all civil proceedings arising under title 11 [the Bankruptcy Code], or arising in or related to cases under title 11." The question is whether the Debtor's claim under K.S.A. 16a-5-109 falls within any of these jurisdictional grants.

---

[23]The standing order was effective as of July 10, 1984. The order is referred to in D. Kan. Rule 83.8.5, and is quoted in the Preface to the 2012 Local Rules of the United States Bankruptcy Court for the District of Kansas, at page v.

Case 11-20513    Doc# 41    Filed 09/24/12    Page 13 of 20

A leading bankruptcy treatise suggests that when a cause of action is created by title 11 (the Bankruptcy Code), then a civil proceeding asserting the claim is one "arising under title 11."[24] The Debtor's potential claim under K.S.A. 16a-5-109, a Kansas statute, obviously does not arise under the Bankruptcy Code. The "arising in" facet of the Court's jurisdiction is a residual category largely made up of administrative matters that could not have arisen had there not been a bankruptcy case.[25] The administration of the Debtor's case was completed before Sallie Mae notified her that it had declared her to be in default. Because the Debtor's case was over before Sallie Mae acted, it is impossible to see any way in which a claim based on that notification could be said to have "aris[en] in" her case. The Court is convinced that the fact Sallie Mae may have based its declaration solely on the Debtor's having filed bankruptcy is not enough to make her claim under K.S.A. 16a-5-109 one "arising in" her bankruptcy case.

This leaves only the question whether the Debtor's claim is "related to" her bankruptcy case. The leading statement of the extent of this jurisdictional base comes from the Third Circuit's decision in *Pacor, Inc., v. Higgins*, where the court said a civil proceeding is "related to" a bankruptcy case when "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy."[26] The Tenth

---

[24]1 *Collier on Bankruptcy*, ¶ 3.01[3][e][i] at 3-14 (Alan N. Resnick & Henry J. Sommer, eds.-in-chief, 16th ed. 2012).

[25]1 *Collier on Bankruptcy*, ¶ 3.01[3][e][iv] at 3-20 to 3-21.

[26]743 F.2d 984, 994 (3d Cir. 1985). *See* 1 *Collier on Bankruptcy*, ¶ 3.01[3][e][ii] (stating that *Pacor* is the most frequently cited case dealing with "related to" jurisdiction).

14

Circuit adopted this test in *United States v. Gardner*, when it said:

> Related proceedings are civil proceedings that, in the absence of a
> bankruptcy petition, could have been brought in a district court or state
> court.  [Citation omitted.]  "[T]he test for determining whether a civil
> proceeding is related in bankruptcy is whether the outcome of that
> proceeding could conceivably have any effect on the estate being
> administered in bankruptcy."  *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d
> Cir.1984) (emphasis omitted).  Although the proceeding need not be against
> the debtor or his property, the proceeding is related to the bankruptcy if the
> outcome could alter the debtor's rights, liabilities, options, or freedom of
> action in any way, thereby impacting on the handling and administration of
> the bankruptcy estate.  [Citations omitted.][27]

The Debtor could have brought a proceeding against Sallie Mae for violating

K.S.A. 16a-5-109 in a Kansas state court, although the specific ground for Sallie Mae's

decision to declare her to be in default would not have existed in the absence of her

bankruptcy petition.  The Debtor's claim against Sallie Mae could have no effect on her

bankruptcy case, though, because the case was over and done with before Sallie Mae

notified her that it had declared default and accelerated her note.  For purposes of her

bankruptcy case, the Debtor's rights, liabilities, options, and freedom of action had

already been finally determined.  Once her case was over, her debtor-creditor relationship

to Sallie Mae was no longer affected by anything in the Bankruptcy Code, but was

governed completely by non-bankruptcy law, including the Kansas Uniform Consumer

Credit Code (assuming it applies to student loans).  Because the Debtor bases her claim

on the allegation that Sallie Mae declared default solely because she filed bankruptcy, her

---

[27]913 F.2d 1515, 1518 (10th Cir. 1990).

claim does have a relationship to her bankruptcy case, but the Court concludes the relationship the Debtor alleges is too tenuous to bring the claim within the Court's subject matter jurisdiction over disputes "related to" the Debtor's bankruptcy case.

The Court has found two Circuit court opinions addressing a bankruptcy court's subject matter jurisdiction over a nondischargeable student loan after a Chapter 13 debtor received a discharge and the bankruptcy case was closed.[28]  These cases cement the Court's view that it does not have subject matter jurisdiction over the Debtor's claim that Sallie Mae violated K.S.A. 16a-5-109 by declaring a default based on her bankruptcy filing.

In *Kirkland*, the debtor's confirmed Chapter 13 plan called for her to pay all the principal she owed on three nondischargeable student loans on the date she filed bankruptcy; she made her plan payments, which should have left her owing only postpetition interest on the three loans.[29]  For reasons not explained in the record, however, the trustee had paid only two of the three loans, refunded some money to the debtor, and reported the debtor had completed her plan; consequently, a discharge order was entered and the case was closed.[30]  The creditor holding the third loan then began trying to collect from the debtor, and the debtor eventually asked the bankruptcy court to

---

[28]*ECMC v. Kirkland (In re Kirkland)*, 600 F.3d 310 (4th Cir. 2010) (2 to 1 decision); *McAlpin v. ECMC (In re McAlpin)*, 278 F.3d 866 (8th Cir. 2002).

[29]*Id*. at 312.

[30]*Id*.

16

determine that she had paid the principal amount of that loan in full, leaving her owing only any interest that had accrued postpetition.[31] The court ruled the debtor still owed the principal since it had not been paid, but allowed the creditor only a small amount of postpetition interest based on the creditor's failure to prove that more had accrued and denied the creditor any postpetition collection costs.[32] The district court affirmed, rejecting the creditor's new assertion that neither the bankruptcy court nor the district court had subject matter jurisdiction to determine either the postpetition interest or collection costs.[33] On appeal, the Fourth Circuit reversed, ruling that the creditor's claim for postpetition interest and collection costs was not a matter under title 11, nor was it a civil proceeding arising in or related to the debtor's bankruptcy case.[34]

In *McAlpin*, the Eighth Circuit similarly ruled a bankruptcy court had no subject matter jurisdiction to enjoin a student loan creditor from seeking to recover postpetition collection costs from the debtor.[35] The debtor had completed a Chapter 13 plan that provided no payment on a late-filed claim for defaulted student loan debts, and had received a discharge.[36] Then he objected to the student loan creditor's proof of claim,

---

[31]*Id.* at 312-13.

[32]*Id.* at 313-14.

[33]*Id.* at 314.

[34]*Id.* at 316-18.

[35]278 F.3d at 867-68.

[36]*Id.* at 867.

17

arguing collection costs included in it were excessive.[37]  The creditor did not respond, and

the bankruptcy court entered an order holding the creditor could recover only the unpaid

principal and interest.  The creditor did not appeal that order, but continued to try to

recover the collection costs.[38]  The debtor again brought the matter before the bankruptcy

court, which issued an order enjoining the creditor from trying to recover the collection

costs.[39]  On appeal, the Eighth Circuit Bankruptcy Appellate Panel reversed, concluding

the bankruptcy court did not have subject matter jurisdiction to issue the order limiting

the creditor's recovery to principal and interest.[40]  The Eighth Circuit affirmed that ruling,

saying:

> We agree that the bankruptcy court did not have jurisdiction in the claim-objection proceeding under 28 U.S.C. §§ 157(b) or (c) (establishing core and non-core bankruptcy court jurisdiction), because (1) [the debtor's] challenge to the propriety of the claimed collection costs came after his discharge, so the claim could no longer have been against the estate, and thus did not involve a right created by bankruptcy law or arising only in bankruptcy, [citation omitted]; and (2) the claim-objection proceeding was not related to the bankruptcy, because at the time [the debtor] objected to the claim there was no longer a plan to be confirmed, or an estate, and therefore the proceeding could not conceivably have affected his estate, [citations omitted.][41]

The Debtor's claim that Sallie Mae violated K.S.A. 16a-5-109 is based solely on

_____

[37]*Id.*

[38]*Id.*

[39]*Id.*

[40]*Id.* at 868.

[41]*Id.*

Kansas state law. The allegation that Sallie Mae made its decision to declare a default and accelerate the debt strictly because the Debtor filed a bankruptcy case does make the claim related to the bankruptcy case, but that tangential relationship is not sufficient to bring the claim within this Court's jurisdiction over matters "arising under" the Bankruptcy Code, or "arising in" or "related to" the Debtor's bankruptcy case. The claim simply can't have any effect on the Debtor's already completed bankruptcy case.

**3. Because the Court does not have subject matter jurisdiction to decide the Debtor's only colorable claim against Sallie Mae, the Debtor's motion for enforcement of discovery is moot and must be denied.**

In effect, by ruling on Sallie Mae's request for dismissal of the Debtor's claim, the Court has stayed the Debtor's effort to force Sallie Mae to supplement its discovery responses. This is permissible under federal court procedures.[42] Furthermore, now that the Court has determined the Debtor has not asserted a valid claim to relief that falls within this Court's subject matter jurisdiction, the Debtor is no longer entitled to obtain discovery under this Court's authority.[43] Thus, the Court's conclusion that the Debtor has failed to state a valid claim on which this Court could grant her relief means that she is not entitled to obtain any discovery from Sallie Mae, and her motion to enforce discovery

---

[42]*See* 8 Charles Alan Wright, Arthur r. Miller, & Richard L. Marcus, *Federal Prac. & Pro.: Civil*, § 2008 at 137-39 (Thomson Reuters 2010).

[43]*See, e.g,*, *American Communications Assoc., Local 10, v. Retirement Plan*, 488 F.Supp. 479, 484 (S.D.N.Y. 1980) (discovery rules designed to support properly pleaded cause of action, not to discover whether a claim exists); *McLaughlin v. Copeland*, 455 F.Supp. 749, 753 (D. Del. 1978) (plaintiff not entitled to discovery to determine whether factual basis may exist for claim he has not made).

19

is therefore moot and must be denied.

**CONCLUSION**

For these reasons, the Court concludes the Debtor's motion asking the Court to hold Sallie Mae in contempt fails to state a claim for relief that comes within this Court's jurisdiction. Consequently, the motion is hereby dismissed. In addition, that ruling has rendered moot the Debtor's motion for enforcement of discovery, so it must be denied.

Judgment is hereby entered dismissing the Debtor's motion to hold Sallie Mae in contempt (Docket No. 20), and denying the Debtor's motion for enforcement of discovery (Docket No. 27). Pursuant to Federal Rule of Bankruptcy Procedure 9021, this judgment will become effective when it is entered on the docket for this case under Bankruptcy Rule 5003.

# # #